UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RUSSELL R. MILLER,                    )        No. CV 08-8226-RC
                                      )
            Plaintiff,                )
                                      )        OPINION AND ORDER
      v.                              )
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner of Social Security,      )
                                      )
            Defendant.                )
_____)

      Plaintiff Russell R. Miller filed a complaint on December 17,
2008, seeking review of the Commissioner's decision denying his
application for disability benefits.  On May 20, 2009, the
Commissioner answered the complaint, and the parties filed a joint
stipulation on June 19, 2009.

                            **BACKGROUND**

      On October 31, 2005, plaintiff, who was then 52 years old,
applied for disability benefits under Title II of the Social Security
Act ("Act"), 42 U.S.C. § 423, claiming an inability to work since
May 21, 2004, due to lead poisoning, dementia, and neuropsychological

1  problems.  Certified Administrative Record ("A.R.") 94-98, 122.  The

2  plaintiff's application was initially denied on May 11, 2006, and was

3  denied again on April 5, 2007, following reconsideration.  A.R. 64-74.

4  The plaintiff then requested an administrative hearing, which was held

5  before Administrative Law Judge Lawrence D. Wheeler ("the ALJ") on

6  November 13, 2007.  A.R. 26-48, 75.  On January 29, 2008, the ALJ

7  issued a decision finding plaintiff is not disabled.  A.R. 7-21.  The

8  plaintiff appealed the decision to the Appeals Council, which denied

9  review on October 10, 2008.  A.R. 3-6.

10

11                          **DISCUSSION**

12                              **I**

13       The Court, pursuant to 42 U.S.C. § 405(g), has the authority to

14  review the decision denying plaintiff disability benefits to determine

15  whether his findings are supported by substantial evidence and whether

16  the Commissioner used the proper legal standards in reaching his

17  decision.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009);

18  Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009).  The claimant

19  is "disabled" for the purpose of receiving benefits under the Act if

20  he is unable to engage in any substantial gainful activity due to an

21  impairment which has lasted, or is expected to last, for a continuous

22  period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R.

23  § 404.1505(a).  "The claimant bears the burden of establishing a prima

24  facie case of disability."  Roberts v. Shalala, 66 F.3d 179, 182 (9th

25  Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80

26  F.3d 1273, 1289 (9th Cir. 1996).

27

28       The Commissioner has promulgated regulations establishing a five-

step sequential evaluation process for the ALJ to follow in a disability case.  20 C.F.R. § 404.1520.  In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities.  20 C.F.R. § 404.1520(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20 C.F.R. § 404.1520(d).  If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work.  20 C.F.R. § 404.1520(f).  If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. § 404.1520(g).  Moreover, where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments.[1]  <u>Maier v.</u>

---

[1]  First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work.  20 C.F.R. § 404.1520a(b)(1).  Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation.  20 C.F.R. § 404.1520a(c)(2-4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment.  20 C.F.R.

1  Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914-15 (9th Cir. 1998)

2  (per curiam).

3

4      Applying the five-step sequential evaluation process, the ALJ

5  found plaintiff has not engaged in substantial gainful activity since

6  the alleged onset date of May 21, 2004.  (Step One).  The ALJ then

7  found plaintiff "has the following severe impairments: peripheral

8  neuropathy (possibly lead toxicity related) and mild depression/

9  dementia (also possibly related to lead toxicity)" (Step Two);

10  however, he does not have an impairment or combination of impairments

11  that meets or equals a Listing.  (Step Three).  The ALJ next

12  determined plaintiff is unable to perform his past relevant work as an

13  automobile muffler and radiator installer.  (Step Four).  Finally, the

14  ALJ determined plaintiff can perform a significant number of jobs in

15  the national economy; therefore, he is not disabled.  (Step Five).

16

17                                  II

18      A claimant's residual functional capacity ("RFC") is what he can

19  still do despite his physical, mental, nonexertional, and other

20  limitations.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001);

21  see also Valentine v. Comm'r, Soc. Sec. Admin., 574 F.3d 685, 689 (9th

22  Cir. 2009) (RFC is "a summary of what the claimant is capable of doing

23  ────────────────────
   § 404.1520a(d).  Fourth, when a mental impairment is found to be

24  severe, the ALJ must determine if it meets or equals a Listing.
   20 C.F.R. § 404.1520a(d)(2).  Finally, if a Listing is not met,

25  the ALJ must then perform a residual functional capacity

26  assessment, and the ALJ's decision "must incorporate the
   pertinent findings and conclusions" regarding plaintiff's mental

27  impairment, including "a specific finding as to the degree of
   limitation in each of the functional areas described in

28  [§ 404.1520a(c)(3)]."  20 C.F.R. § 404.1520a(d)(3), (e)(2).

                                  4

(for example, how much weight he can lift).").  Here, the ALJ found plaintiff has the RFC to:

> perform medium work activity[2] not involving more than simple, repetitive tasks, more than frequent use of his bilateral upper and lower extremities, frequent use of his hands for fingering, handling and feeling, concentrated exposure to extreme temperatures or vibration, or more than moderate exposure to workplace hazards such as machinery or working at unprotected heights.

A.R. 16 (footnote omitted; footnote added).  However, plaintiff contends the ALJ's RFC assessment is not supported by substantial evidence because the ALJ improperly rejected the opinions of examining psychologist Jennifer Watson, Ph.D.  The plaintiff is correct.

Dr. Watson examined plaintiff on June 13 and July 13, 2005, conducted extensive psychological testing, including the Wechsler Memory Scale-R, and diagnosed plaintiff as having "moderate" dementia. A.R. 185-87, 201-09.  Dr. Watson found plaintiff has "multiple areas of moderate to severe cognitive compromise, including memory.  There is clear decline from a previous level of higher cognitive function. Record review raises the possibility of concentration from lead exposure."  A.R. 208.  Dr. Watson summarized plaintiff's cognitive

---

[2]  Under Social Security regulations, "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

1 | difficulties as:

3   1.  Memory impairment, including impairment in verbal and
4   nonverbal memory.  Impairment includes working memory,
5   immediate or short term memory, delayed memory, and
6   recognition memory.  Both verbal and non-verbal memory are
7   severely impaired.  Memory testing documents the presence of
8   rapid forgetting or what is also described as an amnestic
9   memory pattern.  This type of pattern occurs in organic
10  illness.
11  2.  Impaired verbal fluency, including both phonemic and
12  semantic verbal fluency.  Both are severely impaired.
13  3.  Impaired fund of word knowledge.  This is moderately to
14  severely impaired.
15  4.  Decreased confrontation naming ability.  This is in low
16  average range.
17  5.  Variable Executive skills, with impaired phonemic
18  fluency. . . , slowing in cognitive processing and severely
19  impaired multi-tasking ability.
20  6.  Impaired calculation ability.
21  7.  Visual-constructive skills on timed tasks (reflecting
22  also slowing in cognitive processing speed) are in the low
23  average range which is likely below expectation for
24  [plaintiff] based on prior occupational skills.
25  8.  By clinical observation, he needs to exert extreme
26  effort on testing.

28 | A.R. 207-08.  Dr. Watson also found that plaintiff's cognitive and

1   personality strengths included his:  ability to reason about visual-

2   spatial patterns, including the ability to organize and draw a complex

3   figure; orientation; motivation and perseverance despite cognitive

4   difficulties; and emotional coping, including lack of depression.

5   A.R. 208.  Subsequently, based on her 2005 examination and testing of

6   plaintiff, Dr. Watson opined that plaintiff is unable to work because

7   of his "severe impairment . . . in memory (not able to learn or recall

8   new information), verbal fluency, and vocabulary knowledge (fund of

9   word knowledge), and calculation ability[,]" A.R. 181, as well as his

10  impaired "ability to sustain attention[.]"  A.R. 183.

11

12      "[T]he ALJ may only reject . . . [an] examining physician's

13  uncontradicted medical opinion based on 'clear and convincing

14  reasons[,]'" Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155,

15  1164 (9th Cir. 2008) (citation omitted); Widmark v. Barnhart, 454 F.3d

16  1063, 1066 (9th Cir. 2006), and "[e]ven if contradicted by another

17  doctor, the opinion of an examining doctor can be rejected only for

18  specific and legitimate reasons that are supported by substantial

19  evidence in the record." Regennitter v. Comm'r of the Soc. Sec.

20  Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999); Ryan v. Comm'r of Soc.

21  Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

22

23      Here, the ALJ rejected Dr. Watson's opinions, stating:

24

25      Dr. Watson apparently administered various psychological

26      tests in which the claimant achieved "compromised" and/or

27      "borderline" results in various areas of memory functioning.

28      Without giving specific examples or observations, Dr. Watson

1      noted that the claimant has severe memory problems impacting
2      his ability to learn or recall new information, his verbal
3      fluency and ability to perform calculations.  However, she
4      noted the claimant displayed no signs of depression,
5      anxiety, or psychosis and, although she noted that the
6      claimant's cognitive problems impact his ability to perform
7      daily functions, no specific examples, complaints or
8      observations were noted.  As such, Dr. Watson diagnosed the
9      claimant with moderate dementia and assessed him as unable
10     to work. . . .   [¶]   A statement by any physician that the
11     claimant is disabled or unable to work is a conclusion on
12     the ultimate issue to be decided, however, and is not
13     binding in reaching a determination as to whether the
14     claimant is disabled within the meaning of the Social
15     Security Act.

16

17  A.R. 14.  Although the ALJ is "'not bound by the uncontroverted
18  opinions of the claimant's physicians on the ultimate issue of
19  disability, . . . he cannot reject them without presenting clear and
20  convincing reasons for doing so.'"  Reddick v. Chater, 157 F.3d 715,
21  725 (9th Cir. 1998) (citations omitted).  Here, the ALJ's circular
22  reasoning does not constitute a specific and legitimate reason for
23  rejecting Dr. Watson's opinions.  Moreover, the ALJ is wrong.  Dr.
24  Watson **gave** (not "apparently") plaintiff a battery of psychological
25  tests and listed plaintiff's scores on those tests, A.R. 185-7, and
26  then set forth the medical implications and conclusions drawn from
27  those tests, as is appropriate.  A.R. 180-4, 201-9.  In discussing the
28  implications of plaintiff's test results, Dr. Watson stated, for

1 instance:

2

3     [The plaintiff] has difficulty learning and recalling new

4     information.  He benefits little if at all from repetition,

5     cueing, and recognition in increasing his memory.  [¶]  He

6     was only able to repeat 3 digits backward (Digit Span),

7     often viewed as an index of working memory, this score is

8     far below expectation.  [¶]  He was unable to learn or

9     recall two stories (Logical Memory I and II, 0 out of 75

10     story elements and 0 out of 50 story elements, respectively)

11     with both scores falling in the first percentile or

12     compromised range.  [¶]  Compromise is documented in his

13     ability to learn and recall novel words [sic] pairs (Verbal

14     Paired Associates I and II).  [¶]  Compromise is also

15     documented in his ability to learn and recall a long list of

16     15 words.  He was given 5 trials to learn this list.  He

17     learned 3, 2, 4, 3, and 4 out of 15 of the words across the

18     five learning trials.  He could only recall 2 of the words

19     upon brief delay and one upon long delay and could only

20     recognize three of the words when verbally presented a list

21     to sort them out of.  Thus compromise is documented in

22     verbal memory testing.  [¶]  To further assess memory

23     function, he was asked to draw and then later recall a

24     complex design.  Delayed recall again fell in the

25     compromised range as he could only recall 8 out of 36

26     elements both on brief and long delay (first percentile,

27     compromised).  Thus nonverbal memory is impaired.  [¶]  [The

28     plaintiff] was given the Paced Auditory Serial Addition

1    Test. . . .   This test combines cognitive processing speed

2    with calculation ability, and assesses the impact of multi-

3    tasking on memory function.   Impairment was again documented

4    with his scores falling on both the three second and two

5    second trials in the compromised range (1st percentile).

6

7    A.R. 206.

8

9    The ALJ also rejected Dr. Watson's opinions for the following

10   reasons:

11

12   [T]he claimant has never sought out or required ongoing

13   mental health treatment or psychiatric medications.

14   Although Dr. Watson noted that the claimant has severe

15   memory problems impacting his ability to learn or recall new

16   information, his verbal fluency and ability to perform

17   calculations, no specific examples or observations were

18   cited and Dr. Watson admits that she is not a treating

19   source but only saw the claimant on a single occasion. . . .

20   Although the claimant showed some genuine signs of impaired

21   memory and concentration during Dr. Donohue's examination,

22   as noted above, the claimant denied having any trouble

23   performing daily living activities or experiencing

24   depression, anxiety, or similar psychiatric problems.   [¶]

25   At the hearing, the claimant's thoughts did not seem to

26   wander and all questions were answered alertly and

27   appropriately. . . .

28   //

10

1  A.R. 19.  As discussed above, the record does not support the ALJ's

2  conclusion that Dr. Watson cited no examples or observations.

3  Moreover, the ALJ's disparagement of Dr. Watson's opinions because she

4  is not a treating physician is contrary to the law, and "ignores the

5  well-established [Social Security] distinction between an examining

6  and a treating doctor.  Like the doctor[] who examined [plaintiff] at

7  the Commissioner's request, Dr. [Watson] was neither asked, nor paid,

8  to provide treatment for [plaintiff], but rather to give an objective

9  opinion about [plaintiff's] medical condition."[3] Regennitter, 166

10 F.3d at 1299.  Similarly, the ALJ's rejection of Dr. Watson's opinions

11 because plaintiff "has never sought out or required ongoing mental

12 health treatment or psychiatric medications[,]" A.R. 19, has

13 specifically been criticized by the Ninth Circuit "because mental

14 illness is notoriously underreported and because 'it is a questionable

15 practice to chastise one with a mental impairment for the exercise of

16 poor judgment in seeking rehabilitation.'" Regennitter, 166 F.3d at

17 1299-1300 (citations omitted).

18

19      Finally, in noting "[a]t the hearing, the claimant's thoughts did

20 not seem to wander and all questions were answered alertly and

21 appropriately[,]"[4] the ALJ acted as his own medical expert,

22

23      [3]  The dismissal of Dr. Watson's opinions on this ground is
24 particularly ironic here where the ALJ relied on the opinions of
   examining psychologist Margaret A. Donohue, Ph.D., and
25 nonexamining psychiatrist M.G. Salib, M.D., to determine
   plaintiff is not disabled.  A.R. 14-15, 19, 231-35, 244-61.
26

27      [4]  To the extent the Commissioner posits other reasons for
   the ALJ's rejection of Dr. Watson's opinion, since the ALJ did
   not rely on such reasoning in finding plaintiff not disabled, the
28 Court cannot consider the Commissioner's post hoc rationale.  See

substituting his opinion for Dr. Watson's professional interpretation of the clinical testing, which is improper.  Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975); see also Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (As a lay person, an ALJ is "not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion"; he is "simply not qualified to interpret raw medical data in functional terms."); Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("'[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion. . . .'" (citations omitted)); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) (ALJ "must not succumb to the temptation to play doctor and make [his] own independent medical findings."); Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985) (ALJ may not substitute his interpretation of laboratory reports for that of physician).

"Because the ALJ failed to provide adequate reasons for rejecting Dr.[Watson's] opinion[s], [this Court] credit[s] [them] as a matter of law." Widmark, 454 F.3d at 1069; Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004).  Crediting the limitations Dr. Watson found, it is clear that substantial evidence does not support the RFC assessment, Widmark, 454 F.3d at 1070, "[n]or does substantial evidence support the ALJ's step-five determination, since it was based

Bray v. Astrue, 554 F.3d 1219, 1225-26 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ - not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."); Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

1  on this erroneous RFC assessment."  <u>Lingenfelter v. Astrue</u>, 504 F.3d

2  1028, 1040 (9th Cir. 2007).

3

4                                    **III**

5      When the Commissioner's decision is not supported by substantial

6  evidence, the Court has authority to affirm, modify, or reverse the

7  Commissioner's decision "with or without remanding the cause for

8  rehearing."  42 U.S.C. § 405(g); <u>McCartey v. Massanari</u>, 298 F.3d 1072,

9  1076 (9th Cir. 2002).  "Remand for further administrative proceedings

10  is appropriate if enhancement of the record would be useful."

11  <u>Benecke</u>, 379 F.3d at 593; <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th

12  Cir.), <u>cert.</u> <u>denied</u>, 531 U.S. 1038 (2000).  Here, this matter must be

13  remanded for the redetermination of Step Five, in light of the

14  limitations Dr. Watson found.  <u>Widmark</u>, 454 F.3d at 1070; <u>Harman</u>, 211

15  F.3d at 1180.

16

17                                  **ORDER**

18      IT IS ORDERED that: (1) plaintiff's request for relief is

19  granted; and (2) the Commissioner's decision is reversed, and the

20  action is remanded to the Social Security Administration for further

21  proceedings consistent with this Opinion and Order, pursuant to

22  sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered

23  accordingly.

24

25  DATE:  _January 28, 2010_          _/S/ ROSALYN M. CHAPMAN_____
                                            ROSALYN M. CHAPMAN
26                                     UNITED STATES MAGISTRATE JUDGE

27  R&R-MDO\08-8226.mdo
    1/28/10

28

                                    13